# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEBORAH A. PEREZ, on behalf of PETER M. VELEZ, deceased,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,[1]<br><br>Defendant. | No. 16 C 7864<br><br>Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Deborah A. Perez ("Ms. Perez"), on behalf of her deceased brother Peter M. Velez ("Claimant"), seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying Claimant's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). The parties have filed cross-motions for summary judgment [ECF Nos. 12 and 18] pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c) and 405(g). For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 12] is granted, and the Commissioner's Motion [ECF No. 18] is denied. This matter is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

On July 13, 2012, Claimant filed his claims for DIB and SSI, alleging the onset of his disability as of February 16, 2012. (R. 195-207.) The claims were denied initially on September

---

[1] Nancy A. Berryhill is substituted for her predecessor Carolyn W. Colvin pursuant to Federal Rule of Civil Procedure 25(d).

6, 2012, and upon reconsideration on January 28, 2013, after which Claimant timely filed a request for a hearing. (R. 136.) Claimant died of an undetermined cause on January 19, 2013 (R. 29), and his sister Ms. Perez was substituted as the claimant on March 10, 2014. (R. 150, 208-09.) Ms. Perez, represented by counsel, appeared and testified at a hearing before Administrative Law Judge ("ALJ") John K. Kraybill on July 10, 2014. (R. 47-51.) The ALJ also heard testimony from medical expert Charles Metcalf, M.D. (the "ME"), and vocational expert Aimee Mowery (the "VE"). (R. 51-63.)

On October 29, 2014, the ALJ denied Claimant's claims for both DIB and SSI, based on a finding that he was not disabled under the Act. (R. 26-43.) The opinion followed the five-step evaluation process required by Social Security Regulations ("SSR").[2] 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since his alleged onset date of February 16, 2012, through the date of his death on January 19, 2013. (R. 32.) At step two, the ALJ found that Claimant had the severe impairments of low back pain and obesity. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. (R. 34.)

The ALJ then found Claimant had the residual functional capacity ("RFC")[3] to perform light work, except that he never could climb ladders, ropes, or scaffolds; could do no more than

---

[2] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and Claimant was precluded from jobs that involved driving a forklift. (R. 34.) Based on this RFC, the ALJ determined at step four that Claimant was unable to perform any of his past relevant work. (R. 37.) Lastly, at step five, the ALJ found that given Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could have performed, such as hand packager, office helper, or assembler. (R. 37-38.) Therefore, the ALJ found that Claimant had not been under a disability from February 12, 2012, through the date of his death in January 2013. (R. 38.) The Social Security Administration ("SSA") Appeals Council declined to review the matter on May 31, 2015, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 42 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even

3

where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

Ms. Perez presents three primary issues for review. First, Ms. Perez argues that the ALJ did not provide any rationale for his finding that Claimant's subjective complaints of pain were "not entirely credible" in violation of SSR 16-3p and SSR 97-6p and that the ALJ did not properly assess "other source" evidence in violation of SSR 06-3p. [ECF No. 12, at 1.] Next, Ms. Perez argues that the ALJ mischaracterized and omitted significant evidence in Claimant's favor and only selectively addressed the opinions of the examining and treating physicians. (*Id.*) Finally, Ms. Perez contends that the ALJ's limitations as to Claimant's ability to bend and stoop were not supported by substantial evidence and that the ALJ failed to properly assess Claimant's impairments in combination. (*Id.*)

### A. The ALJ's Credibility Determination

Because an ALJ's credibility determination generally affects the outcome of the RFC analysis, the Court will address Ms. Perez's credibility argument first. *See Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (the assessment of a claimant's ability to work will often

depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms). Ms. Perez argues that the ALJ did not provide any reason for finding that Claimant's complaints of pain were not entirely credible.

As an initial matter, the Court notes that since the ALJ issued his decision in this case, the SSA issued a new Policy Interpretation Ruling, which became effective March 28, 2016, regarding how ALJs should assess and evaluate claimants' symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029. The new ruling, which does apply to matters on appeal, eliminates the term "credibility" from the SSA's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1. However, the regulatory factors that ALJs must consider in evaluating the intensity, persistence, and limiting facts of an individual's symptoms remain unchanged, and applicable Seventh Circuit precedent still applies. *See* SSR 16-3p, 2016 WL 1119029 at *7, citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The new SSR directs ALJs to focus on the "intensity and persistence of [the claimant's] symptoms" rather than on "credibility." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence"). Because SSR 16-3p is simply a clarification of the SSA's interpretation of existing law, rather than a change to it, the new ruling applies to Claimant's argument in this case. *See Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016); *Hagberg v. Colvin*, No. 14 C 887, 2016 WL 1660493, at *6 (N.D. Ill. April 27, 2016).

5

As discussed above, the new SSR still requires the ALJ to consider familiar factors in evaluating the intensity, persistence and limiting effects of a claimant's symptoms such as testimony, objective medical treatment, medication and its side effects, daily activities, etc. *See* SSR 16-3p, 2016 WL 1119029, at *4–7, citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ need not mention every piece of evidence in his opinion (*see Craft*, 539 F.3d at 673), but an ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts by ignoring evidence that points to a disability finding. *Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010). Moreover, an ALJ "may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The Court will not overturn an ALJ's credibility determination unless it is "patently wrong." *See Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). A credibility determination is patently wrong when it "lacks any explanation or support." *Elder*, 529 F.3d at 413. The patently wrong standard is "extremely deferential" to an ALJ's credibility determination. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).

In this case, the Court concludes that the ALJ offered inadequate support for his credibility determination. The sum total of the ALJ's assessment of Claimant's credibility is contained in one sentence in the ALJ's opinion:

> After considering the evidence of record, the undersigned finds the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(R. 35.) The Seventh Circuit has held that this "not entirely credible" language "is not only boilerplate; it is meaningless boilerplate" because it "yields no clue to what weight the trier of fact gave the testimony." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *see Chase v. Astrue*, 458 F. App'x 553, 558 (7th Cir. 2012) (holding that the ALJ's "fail[ure] to specify which

6

statements are or are not credible . . . leaves us with no basis to review" the ALJ's credibility and RFC determinations); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011) (the ALJ's finding that the claimant's testimony was "not entirely credible" provides "no explanation of which of [the claimant's] statements are not entirely credible or how credible or noncredible any of them are.").

Here, it is not clear what specific medical evidence in the record the ALJ relied upon when making his credibility determination. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ's perfunctory analysis which followed his negative credibility determination is largely a one-paragraph summary of the medical evidence from a single December 2012 consultative examination. (R. 35-36.) An ALJ, however, is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). The ALJ must provide specific reasons for his credibility finding, and he must support those reasons with evidence and explanation sufficient to allow a reviewing body to understand his reasoning. *See Craft v. Astrue*, 539 F3.d 668, 678 (7th Cir. 2008). A recitation of the facts in connection with the ALJ's conclusions without more leaves it unclear what weight the facts were given and what conclusions they support, and thus does not constitute the accurate and logical bridge between evidence and conclusions necessary for this Court to properly review the ALJ's credibility determination and RFC analysis. *See Steffen v. Colvin*, 2013 WL 2285788, at *10 (N.D. Ill. May 23, 2013).

Further, the ALJ's truncated summary of the some of the medical evidence is completely inadequate. Claimant's complaints of severe, chronic pain are consistent throughout the record and supported by objective medical evidence. For example, an October 2011 CT of the lumbar

7

spine demonstrated moderate to severe neuroforaminal narrowing[4] due to facet hypertrophy. (R. 381-82.) The ME testified that the CT showed "severe narrowing of the foramina" and that Claimant may very well have had some spinal nerve involvement" due to this narrowing, which likely caused pain. (R. 54.) The ALJ, however, did not address this testimony.

Dr. Francisco Espinosa, M.D., who performed surgery on Claimant's spine, also reviewed the October 2011 CT scan and concluded that Claimant was suffering from "flat back syndrome,"[5] which was the "likely source of his persistent pain." (R. 397.) There is nothing in the record that suggests Claimant's treating physicians were suspicious of or disbelieved Claimant's complaints of pain. During a consultative internal medical examination on December 21, 2012, Dr. Weiss, M.D., opined that Claimant did not require the use of a cane, but she offered no opinion as to the validity of Claimant's complaints of severe pain. (R. 478.) Only the ME noted "a large discrepancy" between Claimant's own statements of activities and the medical records without further discussion. (R. 56-57.)

The record also indicates that Dr. Jesse Butler, M.D., Claimant's treating neurosurgeon, regularly prescribed Voltaren[6] and Tramadol[7] for Claimant's pain. (See, e.g., R. 323, 333, 341, 345, 352, 358, 364, 374, 383.) Among the factors an ALJ is required to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms is the "type, dosage,

---

[4] "Neuroforaminal narrowing refers to a reduction of the size of the opening in the spinal column through which the spinal nerve exists." See www.spinehealth.com/glossary/neuroforaminal-narrowing.

[5] "Flat back syndrome is an abnormal condition where the spine loses its natural low back curve to become flat . . . Patients with flat back syndrome typically notice troubles standing upright or have ongoing back or leg pain. Symptoms usually worsen as the day goes on...." See https://www.spinemd/symptoms-conditions/flat-back-syndrome.

[6] Voltaren is an anti-inflammatory drug used to treat mild to moderate pain. See https://www.drugs.com/voltaren.html.

[7] Tramadol is a narcotic-like pain reliever used to treat moderate to severe pain. See https://www.drugs.com/tramadol.html.

effectiveness, and side effects of an medication an individual takes or has taken to alleviate pain or other symptoms." SSR 16-3p, at *7. In addition to prescribing pain medication, Dr. Butler also restricted Claimant to driving a forklift for no more than four hours a day due to Claimant's continued complaints of severe pain, and ultimately restricted Claimant from any use of a forklift. (R. 356, 362.) With the exception of limiting Claimant's use of a forklift in his RFC, the ALJ did not discuss the intensity, persistence and/or limiting effects of Claimant pain and the prescribed medication taken to control his pain. *See Zurawski*, 245 F.3d at 888 (An ALJ must evaluate "both the evidence favoring the claimant as well as the evidence favoring the claim's rejection" and may not ignore an entire line of evidence that is contrary to his findings); *see also Diaz v. Chater*, 55 F.3d 300, 307–08 (7th Cir. 1995) ("An ALJ may not select and discuss only that evidence that favors his ultimate conclusion.").

Moreover, "an ALJ may not discredit testimony of pain solely because there is no objective medical evidence to support it." *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009); *see* 20 C.F.R. § 404.1529(c)(2); *Goble*, 385 F. App'x at 592 (citing cases); *Parker*, 597 F.3d at 922 (holding that "the etiology of extreme pain often is unknown, and so one can't infer from the inability of a person's doctors to determine what is causing her pain that she is faking it"); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004) (finding that the absence of an "objective medical basis" is just one factor among many in determining whether a claimant's testimony regarding pain is credible). Thus, even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003). SSR 16-3p, like former SSR 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about

symptoms, statements and other information provided by treating or examining physicians . . . and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted).

In this case, Claimant repeatedly and consistently complained of back pain following what the ME characterized as "a failed back syndrome." (R. 54-55) ("I think it is clear from three different doctors that after the spine surgery [Claimant] still had pain, he had difficulty certainly with some kinds of activities such as forklifting, driving a forklift, but that he did not have any continuing evidence of radiculopathy. I say that because someone with this degree of pain after surgery would normally be called a failed back syndrome.") Further, none of his treating physicians appeared to disbelieve Claimant's reports of pain, yet the ALJ—though noting Claimant's pain reports—completely failed to discuss or analyze that evidence in the course of reaching what appears to be an adverse credibility determination. Given the ME's opinion regarding Claimant's pain and Claimant's consistent complaints of pain, the ALJ should have discussed this testimony and explain why he did not credit it. The ALJ also did not ask Ms. Perez about her brother's pain and daily activities. Given that Claimant was not available to testify on his own behalf, the ALJ should have asked his sister in his stead.

In sum, the Court concludes that without a sufficient explanation that connects the record evidence to the ALJ's conclusion, the basis for the ALJ's adverse credibility determination is unclear and unreviewable. The Court, however, is not suggesting that the ALJ's credibility determination is incorrect or patently wrong, but only that greater elaboration and explanation is necessary to ensure a full and fair review of the evidence. *See Hively v. Astrue*, No. 09 CV 24, 2010 WL 670226, at *8 (N.D. Ind. Feb. 18, 2010) (*citing Zurawski*, 245 F.3d at 888). On

remand, the ALJ should re-evaluate Claimant's complaints of pain and related limitations, with due regard to the full range of medical evidence, sufficiently articulate how he evaluated that evidence and then explain the logical bridge from the evidence to his conclusions.

**B. Inconsistencies in Medical Opinion Sources**

Ms. Perez argues that the ALJ mischaracterized and omitted significant evidence in Claimant's favor and only selectively addressed the testimony of the ME and the opinions of Claimant's treating physician and the consulting physician who examined Claimant. When the record contains conflicting medical evidence, the ALJ has an affirmative responsibility to resolve that conflict, and cannot simply ignore it. *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). While it is the ALJ's responsibility to resolve conflicting medical evidence, his method of doing so must be reasonable and adequately explained. *Bailey v. Barnhart*, 473 F. Supp. 2d 842, 849 (N.D. Ill. 2006).

As an initial matter, the ALJ mischaracterized the opinion of Dr. Espinosa who performed Claimant's back surgery, stating that Dr. Espinosa "felt surgery was not warranted" (R. 33) when, in fact, Dr. Espinosa opined as to the extensive nature of surgery that would be required to resolve Claimant's condition and that the surgical repair would very likely cause the need for additional surgery at other lumbar levels in the future. (R. 397.) Dr. Espinosa did not find that surgery was not warranted; rather, he found that it would cause additional problems, which contrary to the ALJ's description, might suggest that Claimant's complaints were severe and credible but not easily addressed with surgery.

The Court also concludes that the ALJ's conclusions with regard to Claimant's sitting and standing limitations are not supported by substantial evidence or at a minimum are not sufficiently explained. The record also indicates that Dr. Espinosa diagnosed Claimant with flat

11

back syndrome in May 2012. (R. 397.) The ME specifically testified that he had never heard of flat back syndrome before, but nevertheless understood what Dr. Espinosa was "getting at." (R. 58.) The ME went on to opine that such a finding "shouldn't really prevent sitting or standing for any length of time," but that it also might have caused the pain Claimant reported while driving a forklift. (R. 57-58.) The ALJ made no attempt to discern how the ME knew that Claimant's condition would not limit his ability to sit or stand given his unfamiliarity with the condition at issue, nor did the ALJ explain how his conclusion that Claimant could sit for six hours in an eight-hour day was consistent with his determination that Claimant was precluded from operating a forklift. As Ms. Perez correctly notes, it is unclear how the ME could testify credibly that a condition with which he is unfamiliar would not limit Claimant's ability to sit and stand but would preclude Claimant from driving a forklift, which involves sitting for an extended period of time. [ECF No. 25, at 9.]

The Court will defer to an ALJ's decision if it is supported by "substantial evidence," but here there exist unresolved potential inconsistencies that should have been resolved. *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) (*citing Haynes v. Barnhart*, 416 F.3d at 626). By failing to address these inconsistencies, the ALJ failed to provide a sufficient roadmap to support his conclusions, necessitating remand.

### C. Consideration of "Other Sources" Evidence

Next, Ms. Perez argues that the ALJ's explanation of the weight and credibility given to the coworker affidavits and her own testimony was insufficient to meet the requirements of SSR 06-3p and SSR 96-7p. [ECF 12, at 9–10.] Ms. Perez submitted three identical affidavits from Claimant's former coworkers which stated, in relevant part:

(1) From approximately January, 2011 and thereafter I recognized that Mr. Velez was unable to work more than about 4 hours per day, because of his medical condition.

(2) Mr. Velez struggled to work even 4 hours per day, and often missed work or left work early, because he was not feeling well.

(R. 306-08.) At the hearing, Ms. Perez testified "if [Claimant] went to work he could only stay a few hours because of the pain." (R. 50.)

SSR 06-3p provides for consideration of evidence from other sources, such as friends and neighbors, because it "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-3p, 2006 WL 2329939, at *2. The ALJ must "consider all relevant evidence in the case record," and this includes opinion evidence from "other sources." SSR 06-3p. According to SSR 06-3p, the ALJ "*generally should* explain the weight given to opinions from these 'other sources.'" SSR 06-3p (emphasis added). The ruling does not, however, include an express requirement for a certain level of analysis that must be including in the ALJ's decision regarding the weight or credibility of opinion evidence from "other sources." SSR 06-3p; *see also Chambers v. Astrue*, 835 F. Supp. 2d 668, 678 (S.D. Ind. 2011).

Given that Claimant was dead when the hearing was conducted in this case, the ALJ should have addressed the testimony of his sister and the affidavits from his co-workers since he could not speak for himself other than through his treating physicians' notes of what he told them. The ALJ, in the first instance, should make a determination what weight such testimony should be given and why. Therefore, remand is required for the ALJ to provide further explanation and support for his consideration and evaluation of these other sources.

13

**D. Obesity**

Ms. Perez next argues that the ALJ erred in failing to assess Claimant's impairments in combination, namely by failing to adequately consider Claimant's obesity in combination with his spinal impairment. [ECF No. 12, at 15-16; ECF No. 25, at 10-11.] The ALJ found Claimant's obesity to be a severe impairment at step two but concluded that Claimant's impairments, alone or in combination with his other impairments, did not meet a listed impairment. (R. 32, 34.) At step three, the ALJ noted that there is no listing for obesity but stated that he had taken the combination of Claimant's obesity and other impairments into consideration in formulating the RFC. (R. 34.)

An ALJ must factor in obesity when determining the aggregate impact of a claimant's impairments. *Martinez v. Astrue*, 630 F.3d 693, 698-99 (7th Cir. 2011). The failure to consider the effects of obesity may be harmless error when the ALJ relies on medical opinions by doctors who were aware of the claimant's obese condition. *Prochaska*, 454 F.3d at 736-37 (holding an ALJ's failure to address the effects of obesity may be harmless error if the ALJ "specifically predicated his decision upon the opinions of physicians who did discuss her weight."); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

Here, the ALJ offered no explicit analysis or discussion of the exacerbating effects of Claimant's obesity on his underlying conditions. Instead, the ALJ merely referenced the ME's testimony that he had "factored the claimant's obesity into his opinion" and stated that he had taken the combination of Claimant's obesity and other impairments into consideration in formulating the RFC. (R. 34, 36.) Even assuming this amounts to adequate consideration on the ALJ's part as to whether Claimant's obesity imposed additional physical limitations on him, the ALJ did not specifically discuss how Claimant's extreme obesity factored into his assessment of

14

Claimant's credibility. *Hurley v. Colvin*, No. 12 CV 103, 2014 WL 939441, at *13 (N.D. Ind. Mar. 10, 2014) (finding reversible error where the ALJ did not consider whether the plaintiff's "obesity caused him to be in greater pain tha[n] he would have been had he not been obese or how the postural limitations he testified to (sitting no more than 30 minutes and then needing to lie down) were impacted by his obesity.").

In a case such as this, when there are other flaws in the ALJ's RFC finding, it cannot be said that the ALJ's failure to specifically address Claimant's obesity amounted to nothing more than harmless error. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). On remand, the ALJ should address and discuss the exacerbating effects Claimant's obesity, in combination with his other impairments, when making his RFC determination, particularly with respect to postural limitations such as bending and stooping. SSR 02-1p, 2002 WL 34686281, at *6 (Obesity "may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching."). The ALJ further should address how Claimant's obesity impacts with his pain in the context of the credibility determination. *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) (finding "[e]ven if [the claimant's] arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she was or as arthritic as she but not both.").

### E. Claimant's Ability to Bend and Stoop

Finally, Ms. Perez argues that the ALJ further erred in failing to explain his determination that Claimant was capable of stooping occasionally in light of evidence to the contrary. [ECF No. 12, at 13–14.] The record shows that Claimant consistently demonstrated limited lumbar forward flexion upon physical examination. (R. 324, 336, 344, 355, 361, 367, 377, 386, 477.) The consultative examining physician specifically noted decreased range of motion in the

lumbosacral spine due to pain and abdominal obesity. (R. 477.) Additionally, the ME testified that the lumbar fusion Claimant underwent doesn't allow for "full function of the back as far as moving around." (R. 58.) The Court recognizes that there also is evidence in the records that supports the ALJ's finding, including the September 2012 and January 2013 reports of state agency reviewing physicians who opined Claimant could stoop occasionally. (R. 71, 80, 93, 104.)

At base, the record contains potentially conflicting assessments of Claimant's bending and stooping abilities, and the ALJ had a duty to resolve these conflicts in the record. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (remanding in part because the ALJ's decision failed to explain conflicting medical evidence concerning the claimant's ability to bend his back or stoop occasionally, which the court deemed to be a "critical oversight," as an ability to occasionally bend is required "in order to perform light work."); *Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013) (the ALJ had erred because he had "failed to resolve inconsistencies" between one medical source opinion, which stated that the plaintiff could only flex his spine to 50 out of a possible 90 degrees, and another, which stated that the plaintiff could still occasionally stoop). While the ALJ does not need to mention every piece of evidence, he cannot ignore an entire line of evidence contrary to his conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). There is evidence in the record to both support and to challenge the ALJ's findings regarding Claimant's ability to bend and stoop. Whatever this Court's opinion of the evidence may be, as a reviewing court, it cannot re-weigh or substitute its judgment for that of the ALJ. *See Elder*, 529 F.3d at 412. On remand, the ALJ should explain in greater detail the evidentiary basis for his finding that Claimant was capable of stooping occasionally. *See Gains v. Astrue*, 782 F. Supp. 2d 696, 702, (S.D. Ind. 2011) (*citing Golembiewski*, 322 F.3d at 912).

In conclusion, the Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to use all necessary efforts to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those decisions may be. *See, e.g., Myles v. Astrue,* 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *see Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala,* 22 F.3d 687, 693 (7th Cir. 1994). The Commissioner should not assume that any other claimed errors not discussed in this Memorandum Opinion and Order have been adjudicated in her favor. On remand, the Commissioner, therefore, must carefully articulate her findings as to every step.

## IV. CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 12] is granted, and the Commissioner's Motion [ECF No. 18] is denied. The decision of the Commissioner is reversed, and the matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 29, 2017